Harry Banner v. Commissioner. Abraham Kirschenbaum v. Commissioner.
Banner v. Commissioner
Docket Nos. 3655, 3656.
United States Tax Court
1945 Tax Ct. Memo LEXIS 257; 4 T.C.M. (CCH) 342; T.C.M. (RIA) 45106; March 27, 1945
*257 Samuel Feuer, Esq., 67 W. 44th St., New York, N. Y., for the petitioners. Walt Mandry, Esq., for the respondent. STERNHAGEN In determining deficiencies in 1941 income tax of $25,850.55 as to Banner and $25,847.07 as to Kirschenbaum, the Commissioner held that amounts received by them as the sole shareholders of a corporation, although in form received in sale to the corporation of some of their shares, were essentially equivalent to dividends and taxable as such under Int. Rev. Code, Sec. 115(g). Findings of Fact The petitioners, residents of New Rochelle and New York City, filed their 1941 income tax returns in the Third District of New York. Pedigree Fabrics, Inc., is a New York corporation organized in June, 1934, with a capital stock of "$50,000 - Par Value $100," and is engaged in the rayon converting business, purchasing greige goods, having it finished and dyed, and selling it to manufacturers of ladies' underwear and blouses. The corporation was organized by the two taxpayers and Joseph Berkman. Banner is president and had charge of the technical work and part of the selling. Kirschenbaum is treasurer and had charge of sales *258 and financial matters. Berkman was in charge of credits and the office. Each subscribed for 100 shares for $10,000. Each year thereafter they took additional shares and on May 31, 1938, each owned 240 shares. Berkman died on June 19, 1939. The widow insisted upon the purchase for cash by the corporation or the petitioners of the 240 shares held by the estate. On September 1, 1939, petitioners equally purchased the 240 shares for $25,100 and borrowed $13,300 to do so. They had unsuccessfully attempted to sell the shares to Adolph Kohn, a salesman of Pedigree, and to Ernest Thomas, an employee of Burlington Mills Corporation, which supplied Pedigree with most of its greige goods. On May 31, 1940, the corporation issued a stock dividend of 140 shares to each petitioner, representing 7 shares for each 18 held. At a meeting on December 20, 1941, of Pedigree's board of directors, consisting of petitioners and their wives, the following resolution was adopted: "RESOLVED, that the corporation purchase from Abraham Kirschenbaum the 166 2/3 shares of stock of Pedigree Fabrics, Inc., offered to it for sale, at $300 per share and that the corporation purchase from Harry Banner the 166 *259 2/3 shares of stock of Pedigree Fabrics, Inc., offered to it for sale, at $300 per share, and that the stock so purchased be held by the corporation as treasury stock subject to resale." On December 24, 1941, petitioners each transferred to the corporation 166 2/3 shares and received $50,000 each from the corporation. The shares have since been held by the corporation as treasury shares. November 30, 1941, the surplus was $29,231.53 and "Net Profits for Period" $163,975.54. December 31, 1941, the surplus was $185,463.06. No cash dividends were paid by the corporation before 1943. After the death of Berkman, I. Kelman was employed to take over his duties. The payment in 1941 by the corporation of $50,000 to each of the petitioners was a redemption of shares essentially equivalent to the distribution of a taxable dividend. Each petitioner reported in his 1941 return a long-term capital gain of $17,000 on the transfer of the above shares to the corporation. They concede that the amount should have been $18,725. Memorandum Opinion STERNHAGEN, Judge: The Commissioner having determined that the sale by the taxpayers of 333 1/3 shares of Pedigree stock to the corporation in *260 1941 was a redemption of the shares at such time and in such manner as to make it essentially equivalent to the distribution of a taxable dividend within the meaning of Sec. 115(g) Int. Rev. Code, the taxpayers have undertaken by evidence of the circumstances surrounding the issuance of the shares and the sale to show that this determination is incorrect in fact. They say that the issuance of the shares to Berkman originally and the 1940 stock dividend were bona fide and for a legitimate business purpose and that their purchase from the estate and the subsequent sale to the corporation were without artifice and were not factitious distributions of dividends. We are unable to accept this view. These two taxpayers have been since Berkman's death the only shareholders of the corporation and the effect of the sale was precisely the same as if the corporation had left the shares outstanding and distributed its earnings and profits by way of dividend. In either event the available surplus of $100,000 was transferred to the individual shareholders and they continued to remain the only shareholders. Neither the capital stock nor the capitalization was affected. It is *261 hard to see how any business purpose of the corporation was served by the transfer of its surplus to the shareholders. The only effect of the transfer was the same as if a dividend had been paid. Unlike the situation in , there was no cancellation of shares or reduction of capitalization and there is no question whether a liquidation was recognizable as such or as the essential equivalent of a taxable dividend. The question here is whether the transaction which was in form a sale to the corporation was in reality a redemption (cf. , and at such time and in such manner as to be equivalent to a dividend. The shares purchased by the corporation were held in the treasury and not cancelled; but if they had been cancelled, such cancellation would, as to these sole shareholders, have been an empty formality. It would not have mattered to them, except taxwise, if the shares had remained outstanding in their hands and they had received a dividend. As to the corporation, we can see no unquestionable business or financial advantage in reducing its surplus by way of a purchase of these shares *262 or by way of a declared dividend; especially since it did not cancel the shares, but held them in the treasury. While the Court in , made the sweeping statement that Section 115(g) is never applicable to the redemption of shares which have been theretofore issued bona fide, and we have no disposition to doubt that statement in its application to a liquidation under the circumstances of that case, we are confident that the statement may not be used to defeat the application of Section 115(g) to a redemption of shares, even though theretofore issued legitimately and bona fide, if the circumstances of the redemption are not by way of liquidation and clearly indicate that its effect, and probably its purpose, is essentially equivalent to a taxable distribution of the corporation's accumulated earnings, both upon the only two shareholders and upon the corporation. Cf. ; , affirmed, (C.C.A. 2d). Decision will be entered for the respondent.